JAMES KINGMAN *vs.* KENNAN DAMON & others.

Norfolk.    April 5, 1935. — April 29, 1935.

Present: CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Probate Court,* Jury issues.    *Unsound Mind.    Will,* Validity.

There was no error in the denial of a motion made in a probate court, by respondents contesting a petition for proof of an alleged will of a woman, for a jury issue as to her soundness of mind at the time when she made the will at the age of seventy-three years, where expected evidence stated by counsel for the contestants, nieces and nephews of the decedent, did not support their contention that the decedent, who had been dissatisfied with certain provisions for her benefit in the will of her father in comparison with provisions therein for the benefit of her sister, mother of the contestants, had "insane obsessions" respecting her father's will which affected her will to the detriment of the contestants; and the expected evidence showed merely impairment of the decedent's health over a period previous to the making of her will, that she had been practically blind for some years before it was made, that at about the time it was made she referred on several occasions to her brother, although she had never had a brother, that she did not know how much property she had and had another person take care of it for her, and that she did not know of the employment of a niece by a firm, one of the partners of which was an old family friend, and said she had never heard of the firm.

PETITION, filed in the Probate Court for the county of Norfolk on March 2, 1934, for proof of the will of Josephine S. Kennan, late of Brookline.

The respondents filed a motion for jury issues as to the due execution of the alleged will and the soundness of mind of the decedent, but did not press the motion so far as the issue of execution was concerned. The motion was heard by *McCoole,* J., upon statements of expected evidence by counsel, and was denied. The respondents appealed. The statements of counsel were reported. Material portions thereof are described in the opinion.

The case was submitted on briefs.

*L. A. Mayberry, H. A. Wilson,* & *P. Nichols, Jr.,* for the respondents.

*R. J. Cotter* & *R. J. Walsh,* for the petitioner.

PIERCE, J. This is an appeal from an order of the Probate Court denying a motion of the contestants to frame jury issues, one of which related to the testamentary capacity of the decedent. The contestants contend that they were entitled to that issue because a substantial issue of fact existed (1) "on the question of insane delusions entertained by the alleged testatrix" and (2) "on the question of the testatrix's general feebleness of mind." The controlling principles of law are settled. They need not be restated. *First National Bank of Boston* v. *Francis, ante,* 49, and cases cited.

The decedent was the daughter of John W. Kennan who lived in Bridgewater until 1884, and later in Brookline, where he lived until his death in 1899. His wife, the mother of the decedent, had died earlier, as had one of the decedent's two sisters. The decedent never had any brothers. The sister who had died left no issue. The other sister married and became Mrs. Damon. She died in 1926, and was the mother of the nine contestants in this case. Eight of these children were born prior to April 15, 1898, the date of the will of John W. Kennan. John W. Kennan in his will made bequests to individuals, and to Bridgewater charities mostly connected with the Unitarian church which the testator's wife and her parents had attended. Twenty thousand dollars was left in trust for the children of Mrs. Damon. The residue was divided into two equal parts for the benefit of the two daughters. Out of one part $25,000 was given outright to Josephine and out of the other part $15,000 to Mary W. Damon, the contestants' mother. The remainder of each part was to be held in trust, the net income thereof to be paid to the daughters respectively during their lives. This will further provided that if Josephine were to die without issue the income of her share was to go to Mary, and if Josephine died without issue after Mary's death that share was to go to Mary's children. Similarly, on Mary's death the part of the trust fund set apart for her was to go to her children. Josephine was also given the right to reside for three years following the testator's death in his Brookline house with-

out charge except for household expenses. This provision was apparently intended by the testator to furnish Josephine with an equivalent for a homestead he had given Mrs. Damon on her marriage. Josephine, however, thought she should have been the beneficiary of the Brookline homestead as her absolute property, and in this respect she expressed dissatisfaction with the will.

The contestants' grievance is that the decedent bequeathed a small portion of her estate to them (her nephews and nieces), while they expected a generous portion, and that she left a considerable sum to charities in which she had not publicly professed to be interested.

The decedent was on good terms with her sister and her sister's children during all of her sister's life, with a possible period excepted during which she made a will in 1908. The will now offered for probate, dated May 28, 1923 (the decedent died February 12, 1934), repeats word for word the provisions of the 1908 will so far as they affect the interests of Mrs. Damon or the present contestants. Admitting that the temporary disagreement in 1907 and 1908 between the decedent and Mrs. Damon in respect to the continuance of the maintenance of the Brookline house as a charge on John W. Kennan's estate had passed away when the will of 1923 was executed, the contestants contend that the continued discrimination toward them in the will of 1923 is explainable only on the assumption that the decedent was controlled by an insane obsession concerning the John W. Kennan will, which is sufficient in law to require the court to reject the will of 1923. Other than the alleged fact that the decedent was dissatisfied with the provision of her father's will relating to the property in Brookline, and the alleged fact that she was displeased with the action of her sister at that time in refusing to have the homestead longer maintained at the expense of the trust funds, there is no suggestion in the record that the decedent when she executed her will in 1908 had not full testamentary capacity. The further alleged fact that prior to 1908, and afterwards up to 1923, the decedent read her father's will herself or had it read to her so frequently that she memorized many

of its provisions and used them verbatim in both the will of 1908 and the will of 1923, could have no possible evidentiary value in proof of the contestants' contention that she had an "insane obsession" regarding his will which extended to the making of the 1923 will, and colored its provisions to the detriment of the contestants. In 1923 the decedent was about seventy-three years of age. She died eleven years later. In 1908 she was fifty-seven years of age, and was physically and mentally sound.

The contestants contend that they have evidence that from 1908 to 1918 the decedent grew weaker physically; that she complained about her health; that she had a companion most of the time, was under the care of different physicians, and spent a good deal of her time in bed; that she was practically blind from 1918 or 1919 until the time of her death in 1934. The proponent's evidence was to the effect that her blindness did not become serious until 1927. It is settled that a testator's blindness, whatever its degree, does not affect his testamentary capacity. *Collis* v. *Walker*, 272 Mass. 46, 47. As evidence of mental incapacity the contestants alleged that about the time the decedent executed the 1923 will, she referred to a brother on more than one occasion in her talk with different people, when in point of fact she had none and there was no brother in the family and never had been. Assuming this mental aberration was before the execution of the will and had persisted until the actual execution of her will, it was not sufficient in itself to prove mental incapacity. The contestants affirmed that they had evidence that the decedent did not know how much property she actually had; that she had one Kingman take care of it for her; that within a year after 1923 she did not know that one of her nieces was working for a firm, one of the partners of which was an old family friend; and that when she was told that the niece was working for this firm she said that she "did not know what they meant," and did not know anything about that firm and never had heard the name before.

We have considered carefully all the contestants' statements of further expected testimony on the issue of the

decedent's insane delusions and find nothing which requires detailed discussion. There was no error in law in denying the motion for issues. See cases cited in *First National Bank of Boston* v. *Francis, ante,* 49, 50.

· *Order denying issues affirmed.*